WALKER *v.* CITY OF MOSS POINT, MISSISSIPPI

No. 43554          May 24, 1965          175 So. 2d 173

*Albert Sidney Johnston, Jr.,* Biloxi; *Guy C. Faggard,* Pascagoula, for appellant.

*Eaton, Cottrell, Galloway & Lang,* Gulfport; *Megehee, Colmer & Brown,* Pascagoula, for appellee.

ETHRIDGE, P. J.

██ █ The Mayor and Board of Aldermen of the City of Moss Point, in Jackson County, Mississippi, enacted in October 1963 an ordinance enlarging the corporate limits and boundaries of the city. It found that the expansion was reasonable and required by public convenience and necessity; and that the city would expand certain municipal services into the new area within a stated time after the effective date of the ordinance. Thereafter a petition was filed in chancery court asking for approval of the order. The burden of proof is upon the municipality. After a lengthy hearing, the chancery court found that the proposed enlargement was reasonable and was required by the public convenience and necessity, with one minor exception which it deleted. Miss. Code Ann. § 3374-11 to 3374-13 (1956).

The 1960 census showed the population of Moss Point to be 6,631 persons. As estimated population count of June 1, 1964 reflected 8,246 persons, indicating a growth rate in four and a half years approximating that for the ten years prior to 1960. Before the expansion, Moss Point was four and one-half miles long and one and one-half miles wide. Through the length of the city, near the northern boundary, runs the Escatawpa River. Only one bridge crosses this river within the city limits, so it rather effectively reduces the width of the city. South of the river Moss Point is composed of two heavily populated sections, the east and west portions. These are joined by a bottleneck in the center, formed by the south boundary of the city and the Escatawpa River north of it. Only one street joins these two heavily populated sections.

Immediately south of the old limits lies a heavily populated area extending to present U. S. Highway 90. It is in most respects not distinguishable from that within the city, except that it lacks municipal services. Its streets are continuations of those within the city and bear the same names in most instances, and it is equally heavily populated. Extension westward brings the city limits to the boundary of the Pascagoula River. No objectors live or own property in that area. Proposed extension northward is north of the river, and no objectors live or own land there. The extension eastward is about one-half mile. All of the objectors, appellants, come from the area south of the city, which is heavily populated and juts northward into the present city, to form the wasp waist of the municipal boundary. Moreover, this area cuts Moss Point off from U. S. Highway 90. Until a relocation several years ago, it went through the city.

Effective expansion northward is blocked by the Escatawpa River, westward by the Pascagoula River and its lakes and marshes, and an easterly expansion would increase the problems of transportation and services by lengthening the city, and retaining the bottleneck in the center. Accordingly, the record was ample to warrant the chancery court's conclusion that Moss Point must grow southward for effective municipal operations.

■■■ The additional area to the north and east would be suitable principally for industrial operations. Space is needed for industry. The section adjoining the city's southern boundary contains about 6,000 people. Merchants have begun to establish their places of business just outside of the present city, not only to serve these residents, but those of the city, and at the same time to avoid paying city taxes. Although numerous complaints come from this area, the police department of the city is not able to operate there because of lack of jurisdiction. Moss Point has a modern sewerage and sanitation

system, but in the heavily populated territory south of the city, people are without sewerage facilities, using mostly septic tanks. Raw sewage runs in open ditches and constitutes a breeding place for diseases and epidemics, which may affect also the present residents of the city. Municipal building and zoning ordinances cannot extend to the southern area, without expansion; yet inadequate controls have resulted in some cheap construction, vacant houses, and inability to obtain insured financing. Nevertheless, Moss Point furnishes a substantial part of the fire protection for this section outside its city limits. Its recreational facilities are also available to those residents. In short, the record amply reflects public convenience and necessity for the expansion.

The overwhelming weight of the evidence shows that the extension, with the proposed improvements and services in the new area, is feasible. Each department head made his own study of the area, and determined the additional personnel, equipment and expenses required to service the annexation: the police, fire, public works, city clerk's, and recreational departments. The additional revenue and expenses were calculated, and the feasibility of the added services was demonstrated.

Finally, the chancery court was warranted in concluding that the area selected for annexation was reasonable. Moss Point is blocked from effective commercial and residential expansion northward and westward by the rivers, lakes and low areas. The area already urban in character lies to the south and southeast, and in those directions lie access to U. S. Highway 90. The annexation is most required in this general territory where objectors live. Yet it does not have urban facilities. A serious sanitation problem affects them and residents of the present city. Police protection, street lights, water, sewerage, fire protection, pickups of trash and garbage and other municipal services will be made available to the annexed residents.

Although people in the heavily populated south and southeast area will not continue to have school bus service after annexation, they will receive these numerous city facilities and services not heretofore enjoyed. School bus service is not available within the city. Yet this factor must be weighed against the other more impelling considerations previously mentioned.

In summary, this record presents a strong case for municipal expansion. The annexation is needed by the city, the furnishing of proposed services and improvements is feasible, and the area proposed to be annexed is reasonable under all of the facts. Re Enlargement of Municipal Boundaries, City of Forest, 247 Miss. 340, 153 So. 2d 888 (1963); Dodd v. City of Jackson, 238 Miss. 372, 118 So. 2d 319 (1960).

Affirmed.

*Lee, C. J., and Rodgers, Patterson and Inzer, JJ.,* concur.