ROBERTSON, Justice,
concurring in part, dissenting in part:
I.
If you look at a map, the political boundaries removed, you will think Oak Grove[1] a part of Hattiesburg. If you drive through the area, Oak Grove will appear residential Hattiesburg. The phone company treats Oak Grove and Hattiesburg as one, Hat-tiesburg being the one. The Post Office has not given Oak Grove a zip code. If you follow the average Oak Grovian around, day by day, you will find that he works, plays, shops in Hattiesburg — everything but “sleeps and pays taxes,” and you will wonder why Oak Grove is not politically a part of Hattiesburg.
Hattiesburg demands more than Oak Grove — some twenty-three square miles all in Lamar County. A strong case can be made that the rural, largely unpopulated area to the southwest of town should be left out.[2] My concern is the area lying immediately west of present corporate Hat-tiesburg, that bedroom community that has grown up over the last several decades that is so parasitic upon Hattiesburg for its livelihood, if not its existence. The majority finds 6,315 people living in Oak Grove. The record suggests more, but the numbers are not what matter. Some ninety-five (95%) percent of Oak Grove’s people work in Hattiesburg,[3] and most of those people shop and recreate there as well. Hattiesburg provides waste water treatment services to the independent waste water systems which serve forty (40%) percent of Oak Grove’s homes. And so much more.
The Chancery Court has decreed an unreality. Today we refuse to disturb that decree, as though we may create on paper and through words what, in fact, has no existence. Oak Grove is not an independent community, and nothing we may say may make it so. Any decree to that effect may only be called clearly erroneous, manifestly wrong, if not bizarre.
II.
A.
I concede it is much too late to deny that annexation, a function historically and generically legislative, has a judicial component. Statute law charges chancery court review annexation ordinances under a lone standard — is it reasonable? Miss.Code Ann. § 21-1-33 (1990 Recompiled). See also, In re Boundaries of City of Vicksburg, 560 So.2d 713, 715 (Miss.1990); Ritchie v. City of Brookhaven, 217 Miss. 860, 872, 65 So.2d 436, 440 (1953). Over the years the judicial eye has seen eleven indicia of reasonableness, plus a catch-all “any other,” and the majority correctly recites these.[4] See In re Enlargement of *831 Corporate Boundaries of City of Booneville, 551 So.2d 890, 892 (Miss.1989); In re Extension of Boundaries of City of Jackson, 551 So.2d 861, 864 (Miss.1989); Bassett v. Town of Taylorsville, 542 So.2d 918, 921-22 (Miss.1989). These indicia are the product not of logic nor fiat but of our experience. No one suggests all have been stated nor that their number is finite. Of late, we have been careful to emphasize that these indicia are not to be viewed in isolation, are not talismanic tests in and of themselves, but are to be seen as guides or aids to the general judicial inquiry whether the annexation ordinance be reasonable. In re Boundaries of City of Vicksburg, 560 So.2d at 715; Bassett, 542 So.2d at 921. If a fact goes to the reasonableness of the annexation, we must consider it, and we care not that Dodd v. City of Jackson, 238 Miss. 372, 118 So.2d 319 (1960), nor any of our more recent cases did not mention the matter.
B.
Consider in this setting the majority’s treatment of one of the long seen indicia of reasonableness: the city’s need for expansion. Unhinged from reality, the discussion seems sensible enough. Substantial evidence below shows that Hattiesburg— defined geographically by its pre-annexation corporate limits — does not need growth space. Population growth within present Hattiesburg has been modest of late. Population density is down from ten years ago and is relatively low compared to other cities of similar size. Besides, the Court below approved annexation of twenty-two square miles in Forrest County, much of which is the Tatum Development, a planned residential area south of the city’s pre-annexation boundaries and south of Highway 11. Hattiesburg does not need additional area — Oak Grove — for expansion. Even if it did, how could that need be filled by an already populated area? Hence, the majority’s antiseptic summary: “the chancellor’s opinion as to the city’s need for expansion is supported by substantial and credible evidence.”
But strip away the legalisms. Think in terms of Section 21-1-33 reasonableness, and look at what has happened in the world of Hattiesburg and eastern Lamar County over the last two decades or so, and an altogether different reality emerges. The reason Hattiesburg proper has had little population growth is that Greater Hatties-burg has grown in Oak Grove. The reason Hattiesburg's population density is down is that its people have moved a stone’s throw to the west to Oak Grove. The reason the Tatum Development has not developed and is available for future expansion is that its supply of available land has not been nearly so attractive socially or economically as Oak Grove. The reason Oak Grove is not available today for Hattiesburg’s expansion is that Hattiesburg has already expanded there, with people who in every socio-eco-nomic sense are and have long been a part of and dependent upon Hattiesburg for their livelihood. The reason all of this has *832 happened is that the overwhelming majority of Oak Grovians — today’s Objectors— are like most of the rest of us when the chips are down, and, having seen a way to enjoy the benefits of life in Hattiesburg without any of the costs, have opted out. No more city taxes. No more need to worry about racial minorities — politically, educationally or otherwise.
The finding of the Court below is simply wrong.
C.
Look at another of our long recognized indicia of reasonableness: whether the area sought to be annexed is in the city’s path of growth. Oddly, the Chancery Court failed to find Oak Grove in Hattiesburg’s path of growth. I say “oddly” because the evidence is overwhelming not just that Oak Grove is in Hattiesburg’s path of growth, but that Oak Grove is Hattiesburg’s growth. In recent decades, the major residential growth of Greater Hattiesburg has been westward from the current city limits — toward, in and beyond what is now Oak Grove. Hattiesburg’s failure is that it seeks to annex Oak Grove twenty years after it should have.
The majority focuses only upon the present — that slice of time captured at the June, 1988, hearing — and candidly concedes “the area in Lamar County that Hatties-burg seeks to annex is in the path of growth of the city.” The majority gets around this reality by according the court below an unprecedented prescience and power. “The chancellor ... looked at all possible directions in which the city could grow ... and decided that the area near the southern boundary of the city in Forrest County would be a reasonable path of growth_” What gives the court judicially reviewing a legislative act the power to thwart that act on such policy grounds is not mentioned, nor is it apparent. More intriguing is just what made the court below think it could in fact channel Hatties-burg’s growth southward. What opinions the record affords suggesting such range from wishful thinking to pure fantasy, but somehow that is enough for the majority to say, “This Court cannot say that the chancellor’s decision concerning the city’s path of growth was manifestly in error.” With deference, I suggest that decision is manifestly in error on at least three levels. It is manifestly erroneous (a) as a finding of fact, (b) as an interpretation and application of Section 21-1-33 reasonableness, and (c) as an alegal exercise of judicial review of a legislative act.
D.
Then there is the matter of natural barriers. One would have thought our focus should be upon the ridge to the west, for it is the only natural barrier in the area. The Chancery Court held that the Forrest-Lamar County line was a natural barrier, and it is certainly true that this is not a factor that need necessarily be ignored, though it be of political and not natural origins. On the other hand, Hattiesburg’s annexation into Lamar County first occurred many years ago and, indeed, the self-same Chancery Court has in the past approved other excursions into Lamar County,[5] including another partial one today. We are furnished no articulable reason why the Lamar-Forrest County Line is any more or less of a barrier vis-a-vis Oak Grove than it has been in the past.
What’s more, there is no evidence that Hattiesburg’s prior annexations into Lamar County have created any ascertainable problems. In its opinion, the Court below imagined an effect upon “householders and school patrons and voters in the area sought” but gave us no clue what these might be. We addressed a similar concern in City of Jackson:
Concededly, county lines should not be crossed willy-nilly. Yet problems arising from the existence of the City of Hatties-burg in both Forrest and Lamar Counties are quite minimal. (Citation omitted)
*833 The City of Baldwyn has long existed with the Lee-Prentiss County line dividing its main [business] district. Union straddles the Neshoba-Newton County line.
City of Jackson, 551 So.2d at 865-66.
A second would-be barrier, again not “natural,” is Interstate Highway 59. It is true that 1-59 is a conventional limited-access interstate highway. There are only three exits in the Hattiesburg area, and two cross-over bridges. What makes one think this constitutes 1-59 a barrier between Hattiesburg and Oak Grove escapes me. Every major city in the United States today has a limited access interstate highway or freeway penetrating its center. These are conventionally thought desirable arteries for traffic. The fact that the overwhelming majority of Oak Grove’s citizens find daily access to Hattiesburg a matter of ease and convenience would seem to give the lie to the notion that 1-59 is any sort of barrier at all.
E.
Then there is the question of whether Oak Grove is but a bedroom community; that is, whether the substantial majority of the residents of Oak Grove have established their homes so that they might obtain all of the benefits of suburban life in the City of Hattiesburg without the burden of Hattiesburg taxation. Holmes thought taxes the price we pay for civilization. Oak Grove wants civilization for free.[6]
The majority recognizes that our cases have recognized, as an indicia of Section 21-1-33 reasonableness, whether the property owners and other inhabitants of the areas sought to be annexed, have in the past and for the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the benefits of proximity to the municipality without paying their fair share of taxes. See Extension of the Boundaries of City of Jackson, 551 So.2d at 864; Texas Gas Transmission Corp. of City of Greenville, 242 So.2d 686, 689 (Miss.1971); Kennedy v. City of Kosciusko, 203 Miss. 4, 8, 33 So.2d 285, 286 (1949); Wheat v. Town of Poplarville, 149 Miss. 424, 434, 115 So. 559, 561 (1928); Forbes v. Mayor & Board of Aldermen of City of Meridian, 86 Miss. 243, 252-53, 38 So. 676, 678 (1905). This is the factor that sensibly should dominate today’s search for reasonableness. The majority says otherwise, taking seriously the Oak Grove suggestion that their community exists because “they wanted to maintain their rural lifestyle.” Rural lifestyle no doubt has traditionally meant low property taxes, but I am not sure when it started meaning middle class suburban living with daily commuting into the city for employment and other socioeconomic activity.
F.
Today’s Objectors say they do not need the City’s services, but while saying this, they and their neighbors have signed and filed in the Chancery Court of Lamar County a Petition for Incorporation.[7] Literally thousands of the Lamar County annexation area residents, including all of the individual Objectors except one, have signed the Petition, which stated in part:
*834 Petitioners would aver their purpose in seeking said incorporation is for the increase and improvement of the public services to the rendered to the inhabitants within the area sought to be incorporated; that they propose, if permitted to incorporate, to provide adequate fire and police protection, to provide sanitation services within said territory, to provide traffic control and regulations, to improve and promote recreational opportunities within the area, to provide more and better street lighting, street controls, as well as reasonable land use regulation. (Emphasis added.)
I can only read these words as Oak Grove’s admission that it needs the municipal services Hattiesburg has to offer. A similar situation occurred in City of Jackson, wherein this Court stated:
Within our actual and judicial knowledge a considerable effort has been and is being expended to incorporate the area into the City of Ridgeland, although those efforts have been unsuccessful to date. So seen, the arguments that there is no need for municipal planning and services in the area or that the residents desire to continue pastoral lives as country folk appear quite disingenuous.
City of Jackson, 551 So.2d at 863.
So too, the objectors’ claims in the present case, that they are satisfied with the ways things are, must be seen for what it is. For
... smoke screens removed, these appellants simply do not want to pay town taxes. They claim that there is nothing [the City] can do for them and that they will achieve no benefits from annexation. Each would have us ignore the benefits ... It is not unreasonable to suggest what these objectors want is representation without taxation. This is hardly the stuff which good citizens are made of.
Bassett, 542 So.2d at 922.
Without doubt, there is abundant evidence of the lack of need in many areas traditionally considered in annexation litigation, to-wit: the need for police and fire protection, protection against health and sanitation hazards, and the like. The people of Oak Grove say they have all of the “planning” they want, though it is doubtful we should take them seriously in view of their own incorporation petition. Still, crediting the claims, when we let these factors control the overall reasonableness determination, we ignore the last quarter of a century of suburban residential development in this state. Developers plan their subdivisions so that prospective homeowners will find they do not really have to leave Hattiesburg, and that they have sufficient streets, sewers and the like. Of economic necessity they must do so.
This factor is seen pernicious against the cry that the city is greedy with no interest but expanding its tax base.[8] The converse *835 is the reality. In this me-first era when so many would rather switch than fight, it is the people who move to areas like Oak Grove who drain the city of its tax base. If these same people did not continue to take advantage of everything Hattiesburg has to offer, there would be no grounds for complaint. No one questions a citizen’s prerogative to build his home in the country and live off the land, but it seems a bit disingenuous for someone to build his home, not in the country, but right next door to the city and claim that it is the city that is greedy while the citizen continues to live off city while paying no taxes.
III.
There is another dimension. The Chancery Court approved annexation of the Forrest County Country Club area in northwest Forrest County. This area is demographically residential and in other respects the same as most of Oak Grove. One wonders on what rational basis the Court may approve the annexation of the Country Club area while disallowing the annexation of Oak Grove.
We are told, for one, that the Country Club area lies in Forrest County while Oak Grove lies in Lamar County. The two areas happen to adjoin one another, Country Club lying immediately north of and adjacent to Oak Grove. Their political division is wholly unobservable on the ground, and, as we have indicated, this hardly seems a rational basis for the distinction. Besides, including Country Club and excluding Oak Grove gives Northwest Hattiesburg a decidedly gerrymandered appearance.
Second, we are told that Oak Grove objected to annexation while Country Club did not. No doubt there is a practical reality here that may not be ignored, but the point need be thought about. Are we saying that, if the evidence is legally identical — as it is here, between County Club and Oak Grove — the Court has authority to decree one hundred percent opposite results? Are we saying that, if there is no objection to an annexation, the reasonableness function mandated by the statute is but a rubber stamp, that the Chancery Court has no serious obligation to inquire into reasonableness unless the annexee objects? Again, we do not doubt the practical reality that the Court is simply not going to have certain information opposed to the annexation where there is no vigorous objection, but surely this Court is not prepared to state to the world that the Chancery Court has no serious obligation to inquire into reasonableness where there are no objectors.
On the record before us, Country Club and Oak Grove are factually and legally identical, with the limited exception that Country Club is in Forrest County and Oak Grove is in Lamar County. To be sure, this does not automatically mean that both should be annexed. What it means is that each should be adjudged by the same legal criteria. Put otherwise, on today’s record the annexation of Country Club and the exclusion of Oak Grove fits the classic definition of “arbitrary and capricious,” the antithesis of reasonableness, the essential criteria upon which on judicial review we should review the annexation ordinance.
IV.
At oral argument one of the lawyers told us the 1990’s would be the decade of annexation. Of late annexations have been quantitatively and qualitatively far greater than in years past, a fact within our actual and judicial knowledge. The numbers are striking. Nor are these mere incremental annexations. What was once unheard of and likely unthought has become commonplace: a municipality through annexation, seeking to double, treble or quadruple its corporate limits. See, e.g., Harrison County v. City of Gulfport, 557 So.2d 780, 781 (Miss.1990); In re Boundaries of City of Vicksburg, 560 So.2d at 715; In re Enlargement of Corporate Boundaries of City of Booneville, 551 So.2d at 892.
The pendency of so many annexations raises two institutional concerns, and I regard it imperative that we address these:
A.
The first concerns the nature of annexation litigation. What we have done is force *836 a non-judicial function into the judicial mode, and the fit is a poor one.
The fixing of corporate boundaries, their enlargement or contraction, are “essentially” legislative functions. Marshall v. City of McComb, 251 Miss. 750, 755, 171 So.2d 347, 348 (1965). These were certainly historically legislative functions in the sense that, prior to 1892, they were handled by act of the Legislature. See Martin v. Dix, 52 Miss. 53 (1876); see also discussion in Western Line Consolidated School District v. City of Greenville, 465 So.2d 1057, 1060 (Miss.1985); and particularly, Ritchie v. City of Brookhaven, 217 Miss, at 872, 65 So.2d at 440. We continue to give lip service to the idea that annexation is a legislative matter, e.g., In re Boundaries of City of Jackson, 551 So.2d at 863, but little more.
The fact is that annexation remains essentially, inherently, generically, legislative in nature. But beginning with the act of 1892, no doubt passed out of pragmatic recognition that it simply was not feasible for the Legislature to pass upon annexation questions, we have pretended and inaugurated another reality. What was needed was a forum — a legislative forum — where people and planners and local politicians could come and present their points. The Legislature in Jackson was not a feasible forum. On the other hand, every county had a courthouse and, first, a circuit, and then a chancery court, and these were accessible. No matter that legislative deseision-making was foreign to the way those courts were set up and run. Part of the annexation job was given to the courts.
All of this raised a serious delegation of authority problem, and, to avoid a constitutional separation of powers infirmity, Ritchie v. City of Brookhaven in 1953 held “reasonableness” a judicial question. What this means is that we have gotten annexation law into a legalistic posture where the question of “public convenience and necessity” is a legislative question to be determined by the municipal governing authority, see, e.g., Bassett, 542 So.2d at 920; Western Line, 465 So.2d at 1060; City of Jackson v. Town of Flowood, 331 So.2d 909, 911 (Miss.1976), while “reasonableness” is a judicial question to be determined in Chancery Court and ultimately in this Court on appeal. We seriously say public convenience and necessity is a legislative question not subject to judicial review, while reasonableness is somehow different. But can it be argued that these questions differ in nature, nor in proper process for pursuing answers? Notwithstanding, we divide them, and the dichotomy, translated and applied, leaves the state’s annexation decision-making mechanism saying to the world today that the public convenience and necessity require that Oak Grove be annexed into Hatties-burg, but it is nevertheless unreasonable that this be done. With deference, this sounds silly, and it is.
I do not for a minute suggest that we overrule Ritchie. There was no doubt a time when a solid constitutional argument could and was made that annexation was sufficiently non-judicial that the courts have no authority to touch it. The point is settled to the contrary, and perhaps for the best. It is not the fact that courts are in the annexation business at all that is the problem but the fact that we have forgotten that our function in the annexation process is that of judicial review of the essentially legislative action of a municipal and administrative body, and not that of trial de novo of “reasonableness.”
At its most fundamental level, those exercising legislative functions address the good, and not the right. They act out of a majoritarian concern with what is best for the community overall. Their calculus is inherently utilitarian. Fairness to minorities is a part of the greater good but this is so in a sense wholly distinct from the legal right courts normally accept and enforce. Western Line was correct when it recognized that fairness to citizens and property owners being annexed was an indicia of reasonableness, but we err when we expand that into a right not to be annexed, a wholly different animal. If anything is clear from our cases, it is that no person has a right not to be annexed. See, In re Extension of Boundaries of City of Vicksburg, 560 So.2d at 716; City of Jack *837 son, 551 So.2d at 863, 869; Bassett, 542 So.2d at 922; In re Enlargement of Boundaries of Yazoo City v. Yazoo City, 452 So.2d 837, 841 (Miss.1984); In re Extension of the Boundaries of the City of Clinton, 450 So.2d 85, 89 (Miss.1984); Texas Gas Transmission Corp. v. City of Greenville, 242 So.2d at 690; Bridges v. City of Biloxi, 253 Miss. 812, 823-24, 178 So.2d 683, 687 (Miss.1965); Walker v. City of Moss Point, 252 Miss. 511, 516, 175 So.2d 173,175 (Miss.1965); Dodd v. City of Jackson, 238 Miss, at 395-97, 118 So.2d at 330; Kennedy v. City of Kosciusko, 203 Miss. 4, 33 So.2d 285 (Miss.1948).
Our judicial officers err when they blur (when they see at all) the distinction between (legitimate) objections to an annexation’s reasonableness and the (illegitimate) defense of the (legally non-existent) right not to be annexed. On judicial review, we must accept we are reviewing a judgment of public policy and remember the fact. The reasonableness inquiry must always and may only be made against the backdrop of this realization and this question: Is this annexation good public policy?
All this has to do as well with our approach to the facts. We are and ought be concerned more with legislative facts than adjudicative facts. Strict rules of evidence ought and should be relaxed. More basically, we should ground our decisions in the same sort of facts legislators ground their legislative judgments, a point we have recognized in other settings. See, e.g., Luter v. Hammon, 529 So.2d 625, 629 (Miss. 1988); Thrash v. Mayor and Commissioners of City of Jackson, 498 So.2d 801, 805 (Miss.1986); Board of Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323, 1327-28 (Miss.1982). We should look out the window as much as we look at the record.
This Court’s most immediate error of practice is that we spend our time struggling with an imagined duty of deference to the chancery court. Our annexation cases over the years well reflect this (misguided) struggle, which is wholly at odds with the received jurisprudence of judicial review and with our practice in every other area I know anything about where we are called upon to review agency actions within another department of government. See, e.g., Gill v. Miss. Dep’t of Wildlife Conservation, 574 So.2d 586 (Miss.1990); Magnolia Hosp. v. Miss. State Dep’t of Health, 559 So.2d 1042 (Miss.1990). When judicial review is committed ab initio to our circuit or chancery courts, we act de novo on final review. Mississippi State Tax Comm'n v. Moselle Fuel Co., 568 So.2d 720, 722 (Miss.1990); Barnes v. Board of Supervisors, DeSoto County, 553 So.2d 508, 510 (Miss.1989); Mississippi State Tax Comm’n v. Dyes Investment Co., Inc., 507 So.2d 1287, 1289 (Miss.1987).
Zoning is an area where we have done it right. Zoning is a legislative function no less than annexation. Municipal corporations through their governing bodies pass (re)zoning ordinances the same as they enact annexation ordinances. Judicial review lies in the circuit courts, with final appeal here. What is crucial is that in zoning cases our circuit courts accept the limits of judicial review. They do not try ab initio the reasonableness vel non of the zoning ordinance. They affirm if they find the issue fairly debatable, a standard according the enacting authority great deference. We hear the further appeal de novo in the sense that we do not defer to the circuit court. Instead, our deference is to the zoning authority and we, too, uphold the ordinance if we find its wisdom and legality fairly debatable. See, e.g., Barnes v. Board of Supervisors of DeSoto County, 553 So.2d 508, 510 (Miss.1989); Cooper v. City of Picayune, 511 So.2d 922, 923 (Miss. 1987); Saunders v. City of Jackson, 511 So.2d 902, 906 (Miss.1987); Board of Aldermen of City of Clinton v. Conerly, 509 So.2d 877, 885 (Miss.1987); Thrash v. Mayor and Commissioners of City of Jackson, 498 So.2d at 805-06; Woodland Hills Conservation Association v. City of Jackson, 443 So.2d 1173, 1179-82 (Miss.1983).
We would do well to take a lesson from our sister state of Missouri. With a statute like ours, Missouri mandates that its courts inquire regarding the “reasonableness” of the annexation. Compare Mo. Ann.Stat. § 71.015 (Vernon 1991) to Miss. *838 Code Ann. § 21-1-33 (1990 Recompiled). Unlike us, Missouri handles judicial review of reasonableness, correctly.
... it has been the universal rule that the court does not, in any sense, substitute its discretion or judgment as to the advisability or propriety of the annexation for that of the legislative body of the city, and that it does not review the legislative discretion; its consideration of “reasonableness” is confined to a determination of whether there exists a sufficient showing of reasonableness to make that question, at the least, a fairly debatable one; if there is such, then the discretion of the legislative body is conclusive. State ex inf. Taylor ex rel. Kansas City v. North Kansas City, Banc, 360 Mo. 374, 228 S.W.2d 762; Faris v. City of Caruthersville, Mo.App., 301 S.W.2d 63; State ex inf. Mallett ex rel. Womack v. City of Joplin, 332 Mo. 1193, 62 S.W.2d 393; Dressel v. City of Crestwood, Mo. App. 257 S.W.2d 236. The function of our courts, historically, has been merely to determine, in the light of these principles, whether the exercise of the legislative powers has been arbitrary and clearly unreasonable. (See the cases just cited.) Only to this extent do our courts consider the reasonableness of an annexation.
City of St. Joseph v. Hankinson, 312 S.W.2d 4, 8-9 (Mo.1958).
What has happened here is that we have forgotten these points. In 1950 the Legislature placed reasonableness in the chancery courts. Miss.Laws, ch. 491 (1950). We took the first tentative right step, accepting that an annexation ordinance is a local governing authority’s presumptively valid exercise of legislative power. Town of Crystal Springs v. Moreton, 131 Miss. 77, 90, 95 So. 242, 243-44 (1923). Soon thereafter we fell into error, as judges and lawyers began treating annexations like lawsuits, forcing square pegs into round holes, if you will. Without thinking, and almost reflexively, we try annexation cases by strictures of law, rules of evidence, and conventional limitations upon appellate review. In so doing we have strayed from the beaten paths of law and logic and have further distorted an already bastardized process.
B.
There is a second institutional problem we must address. In this last decade of the Twentieth Century, is our present constitutionally imposed dichotomy of municipal versus county governments itself reasonable and consistent with the public convenience and necessity? No doubt there was a time when city governments and county governments had their separate places, played their roles, with little friction. The level and complexity of government desirable in areas of concentrated population was concededly quite different from that needed in rural agrarian areas.
Life has changed since those simpler days. For one thing, many of our cities have their Oak Groves: bedroom communities where the overwhelming majority of citizens have fled to avoid taxes and, as well, life in pluralistic political and educational and social settings. Under our present structure, I have little sympathy with these individuals and would ordinarily annex them in a heartbeat. I recognize, however, that there is a fundamental structural problem which need be addressed and that is the duplication or overlapping of layers of local government. It is easy to see why Oak Grove and Hattiesburg ought be a part of the same governmental unit, indeed, it escapes me how anyone can seriously suggest otherwise. What is harder to show is why the people of Oak Grove and, for that matter, Hattiesburg, as well, need to be governed and taxed twice at the local level. Why do these people need two layers of local government, the county and the city? When we look at the annexations we have approved in Vicksburg, see In re Matter of Boundaries of City of Vicksburg, 560 So.2d at 715, in Booneville, see In re Enlargement of Corporate Boundaries of City of Booneville, 551 So.2d at 892, and even in that part of the annexation we approve for Hattiesburg today, we cannot help but doubt that the public interest is being served by these enlarged areas being governed twice local *839 ly. The pendency of so many massive municipal annexation efforts around the state renders it imperative that this matter be addressed.
One familiar idea is the metro government, the conjoining of city and county governments for a particular metropolitan area so as to avoid overlap, duplication, inefficiency and waste. The idea is nothing new in other states. Decades ago, people elsewhere have seen that a single consolidated local government may provide more efficiently and more effectively services like law enforcement, parks and recreation, garbage collection, and utilities along city boundaries. Metropolitan government has worked well in populous states like Florida. We have it on good authority that it serves well in more rural states like Montana. Reports from Tennessee are that the Nashville/Davidson County metro government has greatly enhanced the progress and development of the Greater Nashville area.
These changes are well beyond the judicial competence. They would require legislative if not constitutional revision.[9] But the problem of duplicated and overlapping government must be addressed if this decade of the 1990’s — declared by counsel as the decade of annexations — is to leave urban and suburban Mississippi a better and not a worse place to live.
V.
On direct appeal, I would reverse and render. I concur in our affirmance on cross appeal.
PRATHER and BANKS, JJ., concur.

. Within "Oak Grove” I include Westover and all other developed residential areas in the Lamar County portion of the annexation ordinance today at issue.

. I find it curious Hattiesburg would seek this seemingly uninhabitable area to the southwest, and at once eschew the eminently annexable Lake Serene area just a bit beyond Oak Grove. And then there is Canebreak.

. In fact, many of the Objectors themselves are employed in the City of Hattiesburg. Among them are a veterinarian and a professor, both of which travel daily into the City of Hattiesburg for their livelihood.

. These include (1) the municipality’s need for expansion, (2) whether the area sought to be annexed is reasonably within a path of growth of the city, (3) the potential health hazards from sewage and waste disposal in the annexed areas, (4) the municipality’s financial ability to make the improvements and furnish municipal services promised, (5) the need for zoning and overall planning in the area, (6) the need for municipal services in the area sought to be annexed, (7) whether there-are natural barriers between the city and the proposed annexation area, (8) the past performance and time element involved in the city’s provision of services to its present residents, (9) the impact (economic or otherwise) of the annexation upon those who live in or own property in the area proposed for annexation, (10) the impact of the annexation upon the voting strength of protected minority groups, and (11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and for the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the (economic and social) benefits of proximity to the municipality without paying their fair share of taxes.
City of Jackson, 551 So.2d at 864. At the most recent Mississippi Trial and Appellate Judges Conference, H. Hunter Twiford, III and A. Jane *831 Heidelberg offered a thoughtful reformulation of these indicia.
1) The benefits to be gained by the city and its residents, old and new, from expansion.
2) Whether the area to be annexed is in such proximity to the city that it has been benefited or is likely in the reasonably foreseeable future to be benefited by future development attributable to its proximity.
3) Whether the municipality and/or the annexation area will benefit from the provision of municipal level services, including exercise of municipal police power and regulation to solve problems that exist or are likely to exist in the reasonably foreseeable future.
4) Whether, given the city’s history and financial status, the promised level of services can and will be provided to the annexation area within a reasonable time.
5) Given all of the above, whether the exercise of municipal regulation and police power will unduly burden some part of the annexation area.
6) As a final test, if annexation of the area found to be reasonable under the first five tests would dilute the voting strength of minority residents, the chancellor should either reject the annexation as a whole or reconsider the areas that would have been excluded as unreasonable, to see if their inclusion would reverse the dilution.
H. Twiford, III & A. Heidelberg, Mississippi Municipal Annexations, An Update—Circa 1991, 73-75 (April 1991) (unpublished manuscript) [hereinafter Twiford & Heidelberg].

. In re Enlargement of Corporate Limits of City of Hattiesburg, No. 11,512 (Lamar County Chancery Ct., June 10, 1985); In re Enlargement of Corporate Limits of City of Hattiesburg, No. 9858 (Lamar County Chancery Ct., May 4, 1981); In re Enlargement of Corporate Limits of City of Hattiesburg, No. 9,112 (Lamar County Chancery Ct., January 29, 1979).

. I do not mean to suggest that all who find themselves situated near one of our cities and towns and who oppose annexation are selfish, self-centered Oak Grovians. Many annexation objectors fit an altogether different description. I refer to those who for decades have been country folk who have by and large lived off the land, who never dreamed of moving to town or doing anything other than maintaining and enjoying a rural life-style. I refer to those who have made their homesteads without reference or thought to avoiding city taxes, politics or cultural pluralism. Indeed, many of these, who have not merely remained on the home place mom and dad left them, have consciously accepted the costs, risks and inconvenience of living many miles from town.
Under present law these persons have no more right to avoid annexation than any others. Their plight is a matter of legislative concern, as is the Oak Grove phenomenon. I regard it the legislative prerogative and responsibility to address and redress the legitimate annexation concerns of our state’s bona fide country folk.

. In The Matter of The Incorporation of The City of Oak Grove, Lamar County, Mississippi, No. 12,318 (Lamar County Chancery Court filed June 12, 1987).

. H. Hunter Twiford, III and A. Jane Heidelberg gave a graphic description of reality in cities potential annexees see only as greedy. We quote:
Recent studies have detailed the plight of small businesses in small cities. A chain supermarket or discount store, such as the local Wal Mart, will wound, certainly severely and perhaps fatally, numerous downtown small businesses, which reduces the number of middle class small business owners, while increasing the number of lower income hourly jobs. Profits leave the local community. Empty storefronts eventually blight the older areas where lot sizes and lack of parking make redevelopment for major commercial use economically unfeasible. Marginal businesses, such as pawn shops, take over on the first floors of the empty space, unless the property is suitable for use by "symbol analysts," who normally require only relatively small spaces with little parking.
In short, our culture works against the continuous vitality of a city. As existing property ages, it becomes less desirable and more expensive to maintain. It is used by people of lower income who cannot afford to maintain it, and through each stage, existing structures become more dilapidated. People who can afford to move away from urban blight and the problems of the poor do so, and are replaced by the poor. Tax revenues decline, and the city is no longer able to afford the provision of high level municipal services to its residents which are also necessary to attract new commercial and industrial growth. The costs of provision of services increases, both from inflation and increased age of the city's infrastructure. Eventually, cut off from growth, the city withers.
Twiford & Heidelberg, supra, at 9-10.

. At its most recent session, the Mississippi Legislature gave serious consideration to a constitutional amendment resolution which would have inaugurated a local option system of consolidated city/county governments. See H.C.R. No. 71, Reg.Sess., 1991. See also, footnote 3, supra.